THOMAS SEBREE'S DEVISEES v. WESLEY SEBREE ET AL.

**Wills—Devise—Construction—Power to Sell and Convert into Money—Bona Fide use for Life—Trust for Benefit of Devisees—Resulting Trust.**

A testator by will, after he had bequeathed to his wife during life or widowhood all his estate after payment of his debts, provides a clause as follows, "with full power to sell any land or anything else-that she thinks proper, to make or receive deeds for lands or anything she may sell or buy x x x and at her death, or at any other time she may think proper to give up the whole or part of the property, it is to be equally divided between my sons Wesley and Lovell Sebree and my daughters, Polly Stout, Betsey Smith, Jane and Emmie Sebree, etc." Held, that while this would give, the wife the power to sell and convert the land into money for her own bona fide use during life, there is a trust for the benefit of the devisees, to be shared equally at her death or sooner should she surrender same. She would have no power to prefer one of the legatees to the others, or give either one an advantage at the others expense: to do so being a violation of the trust , and contrary to the testators intentions.

APPEAL FROM SCOTT CIRCUIT COURT.

June 11, 1868.

OPINION OF THE COURT BY JUDGE WILLIAMS:

Thomas Sebree died soon after publishing his will of August 1, 1839, in which he devised and bequeathed to his wife during life or widowhood all his estate after the payment of his debts.

> "with full power to sell any land, negroes or any thing else that she thinks proper, to make deeds or receive deeds for lands or any thing that she may sell or buy, x x x *and at her death or at any other time that she may think proper to give up the whole or part of the property it is to be equally divided between my sons Wesley and Lovel Sebree and my daughters Polly Stout, Betsey Smith, Jane and Emmie Sebree,"* &c.

Wesley Sebree lived on an adjoining farm and continued to superintend and control the farm of 50 acres, which his father left and the business affairs generally of his mother, who was then far advanced in life and of impaired constitution and delicate health.

Mrs. Sebree was appointed executrix without the necessity of bond and security. She entered upon the execution of the will, but never returned to court an inventory of the assets, nor made a county court settlement.

February 19, 1855, she acknowledged, before the county clerk, a deed of general warranty dated four days previously, conveying the fifty acres of land to her son Wesley for the recited consideration of fifteen hundred dollars, paid. And on the same day she acknowledged for record a mortgage on a negro woman Rachel to her said son to secure $450, being the purchase price of $245, with interest thereon from December 30, 1841, which he had paid as her security, which mortgage is dated January 15, 1855.

She also under date of January 1, 1855, made a written acknowledgement that the money paid J. F. Robinson for Rachel of $245 as per his receipt to Wesley Sebree, of December 30, 1841, was paid as her security and she promised to pay him $450 with interest from date.

There is also exhibited by Wesley Sebree a note, with the signature torn off, for $700 at six months, payable to Jeremiah Messer, dated February 11, 1839, attested by Garland Smith and

Everet O. Stout, which had been assigned to Abram Minor, on which is a written acknowledgement signed by Elizabeth Sebree, without date, attested by F. J. Dehoney, acknowledging that it was the note of Thomas Sebree and was paid by Wesley Sebree at her instance and she would pay it to him with interest from August 11, 1839.

Mrs. Sebree died in the year 1863, and in Ocober, 1865, the appellants filed their petition, charging fraud, overreaching, undue influence by Wesley Sebree in obtaining said deed over his aged, feeble and incapable mother; also that it was without consideration, and call on him to specify when and how he paid the recited consideration. To this he responded that he paid the consideration by taking up the debt of his father for $700 to Alvin Messer and paying for the negro woman Rachel, bought for his mother, and some small amounts in money which there lacked of being the amount specified in the deed, as the consideration; he denied all fraud, &c., or that his mother was incapable of transacting her business, and traversed the general allegations of the petition.

M. S. Dehoney and James McCord were the subscribing witnesses to the deed, but only the evidence of McCord was taken, and he proves that he was sent for the night the deed was made, to witness it, and count the money, and that the full amount called for in the deed was counted by him, and then paid over by Wesley Sebree to his mother.

What became of this money afterwards we are not informed, the evidence shows that she was an industrious, economical, prudent woman, with a small family, consisting of not over three or four members after her husband's death, and though she had small sums of money to loan out, these do not indicate anything like the amount specified in the deed.

It is quite probable also from the evidence that she realized a debt of over a thousand dollars held by her husband on Cal Johnson, and with some other resources of stock, &c., the Messer debt and purchase of Rachel was most probably paid with her own means.

Besides, it is hardly probable that Wesley would have paid these sums for her and let them rest in parol, without any witnesses, or written evidence, for near fifteen years, and even when the deed was executed, instead of reciting these as the consideration, pay the money, and then at the same time take a mortgage to

secure the money paid for Rachel. There can be no perceivable *bona fide* reason for paying the $500 for the land in money and then taking a mortgage on the negro woman for $450.

But if the design was to get into his hands both the land and negro, and at the same time let his mother have their use for her life, the deed for the land and mortgage on the negro were the appropriate means, as. to permit the negro to remain with her would vitiate an unconditional sale.

The various transactions together with his incorrect statement as to how and when the consideration was paid, strongly impresses the judicial mind that it was not a *bona fide* fair sale and conveyance, upon an actual valuable consideration, but a contrivance by which Wesley was to become possessed at his mother's death, with the land and negro to the exclusion of the other devisees.

Whilst the will gave to her the power to sell and convert the land into money for her own *bona fide* use during life, yet there is connected with it a trust for the benefit of the devisees, for they are jointly to share it equally at her death, or sooner, if she should see proper to surrender it, and the effort of Wesley to oust his co-devisees by getting these conveyances was contrary to the testator's intention and could only be effected by a violation of the trust on the part of his mother. Whilst for her own actual use and necessity she had unlimited control over the property, she had no power to prefer one of the legatees to another, or give him an anvantage at the expense of the others, and any effort to do so, no matter by what subterfuge, was a violation of the trust reposed in her, and cannot prevail against the manifest intention of the testator.

Wherefore, the judgment is reversed with directions to the court below to set aside said conveyance and partition the property according to testator's will.

*Darnaby,* for appellants.

*Robinson,* for appellees.